# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 12ᵀᴴ day of October, two thousand ten.

PRESENT:
> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
> > *Circuit Judges.*

---

In re Vlad Kuzmin,

Attorney.

07-9048-am

**ORDER OF GRIEVANCE PANEL**

---

FOR VLAD KUZMIN:          HAL R. LIEBERMAN, Esq., New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and VLAD KUZMIN is PUBLICLY REPRIMANDED for the misconduct described in the

Committee's report.

## I. Summary of Proceedings

By order filed in July 2007, this Court referred Kuzmin to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Kuzmin had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on November 19, 2008, and February 12, 2009. Kuzmin was represented during the Committee's proceedings by Hal R. Lieberman, Esq. Presiding over the hearing were Committee members Mary Jo White, Esq., Loretta E. Lynch, Esq., and the Honorable Howard A. Levine. In March 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Kuzmin with a copy of the Committee's report, and Kuzmin responded.

In its report, the Committee concluded that there was clear and convincing evidence that Kuzmin had engaged in conduct warranting the imposition of discipline. *See* Report at 16. Specifically, the Committee found that Kuzmin had: (1) missed this Court's briefing deadlines on multiple occasions; (2) regarding *Qun Yang v. McElroy*, 98-4391-ag, missed both the initial briefing deadline and the deadline for responding to this

Court's subsequent order to show cause why the case should not be dismissed based on his default, failed to notify his client promptly of the case status, and failed to adequately advise immigration authorities of the circumstances of Yang's entry into the United States; (3) used a retainer agreement that did not comport with New York's ethical rules; and (4) repeatedly failed to formally withdraw from, or stipulate to the dismissal of, cases that he had abandoned. *Id.*, at 1, 16. After noting the presence of various aggravating and mitigating factors, the Committee recommended that Kuzmin be publicly reprimanded and subject to certain reporting requirements. *Id.* at 16-17. In his response, Kuzmin stated that he had no objections to the factual or legal determinations in the Committee's report, but requested clarification as to the commencement date of the reporting requirements recommended by the Committee. Response at 1.

**II. Additional Defaults After Issuance of Referral Order**

A review of this Court's records indicates that Kuzmin has not missed any briefing deadlines since the March 2010 issuance of the Committee's report. However, as the Committee noted, Kuzmin missed briefing deadlines in six cases between the issuance of this Court's July 2007 referral order and the Committee's February 2009 hearing; four of those defaults clearly occurred after he had received notice of the Court's referral order in March 2008. *See* Report at 7-8; Hearing Transcript at 249-53 (discussing cases docketed under 07-3741, 07-4883, 07-

3

5379, 07-5380, 08-1800, and 08-3457); Kuzmin's March 17, 2009 Post-Hearing Submission.

In addition to the new defaults noted by the Committee, Kuzmin has missed deadlines in three other cases. In *Jin Bei Zhao v. Gonzales*, 06-3438-ag, Kuzmin permitted the October 2008 briefing deadline to pass without filing a brief or requesting an extension, causing this Court to issue an order to show cause why the appeal should not be dismissed based on his default. *See Jin Bei Zhao*, 06-3438-ag, order filed Oct. 31, 2008. After timely responding, *see id.*, response filed Nov. 3, 2008, Kuzmin withdrew the appeal, *see id.*, motion filed Nov. 5, 2008, order granted withdrawal filed Nov. 6, 2008. In *Zhao Xiang v. Gonzales*, 06-5405-ag, Kuzmin allowed the October 2008 briefing deadline to pass before moving to withdraw the appeal more than two weeks later. *See Zhao Xiang*, 06-5405-ag, order filed Sept. 17, 2008 (setting Oct. 17 briefing deadline), motion to withdraw filed Nov. 3, 2008, order granting withdrawal filed Nov. 18, 2008. In *Dian Fei Jiang v. Mukasey*, 08-0980-ag, Kuzmin filed a motion for an extension of the briefing deadline the day after the deadline had passed. *See Dian Fei Jiang*, 08-0980-ag, order filed Apr. 10, 2008 (setting May 12 briefing deadline), motion filed May 13, 2008.

Finally, this Court has received additional information concerning Kuzmin's performance in *Heng Lun Chen v. Gonzales*, 05-

4

5199-ag, which was listed in the July 2007 referral order as one of the cases that were dismissed due to Kuzmin's default on a scheduling order. During the proceedings before the Committee, Kuzmin stated that he had decided not to proceed with that appeal in light of the unlikelihood of success and the possibility of alternative relief being available. Kuzmin's May 2008 Response to Committee's Order to Show Cause, at 15, 16; Hearing Transcript at 37-38. However, in July 2009 (after the Committee's hearing was completed), Heng Lun Chen moved for reinstatement of his appeal, alleging: (a) in September 2005, he retained Kuzmin to file his petition for review, and paid him a total of $6,000 over two years; (b) he diligently checked the status of his case, by visiting Kuzmin's office about twice a year and calling the office over ten times a year, and was consistently told his case was still pending; and (c) in February 2009, he discovered that his petition had been dismissed in March 2006 based on Kuzmin's failure to file a brief. *See Heng Lun Chen*, 05-5199-ag, motion and affidavit filed July 21, 2009. Heng Lun Chen asserted that Kuzmin had failed to keep him apprised of the status of his case, or of the dismissal, and, implicitly, that Kuzmin had permitted the case to be dismissed on default without consulting Heng Lun Chen. *See id.* Heng Lun Chen's motion for reinstatement was denied. *See id.*, order filed Sept. 9, 2009.

We reach no conclusions at this time concerning the

allegations made by Heng Lun Chen, since Kuzmin has not had an opportunity to address them in this proceeding. However, since the allegations are serious, we direct Kuzmin to address them in his first report to the Committee, as explained below.

**III. Conclusions**

Upon due consideration of the Committee's report, the underlying record, and Kuzmin's submissions, it is hereby ORDERED that Kuzmin is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report and DIRECTED to comply with the reporting requirements described on page 17 of the Committee's report.

However, we modify the reporting requirements as follows: (a) Kuzmin's first report must be received by the Committee within 30 days of the filing of the present order, (b) it must cover the time period from March 23, 2010 to the date of the report, and (c) in addition to the content requirements set forth by the Committee, it must address the above-noted allegations made by Heng Lun Chen, the fee arrangement for that case, whether any portion of the fee was retained after the dismissal of the case, and, if any portion was retained, the basis for that retention. The remaining three reports must abide by the requirements set forth in the Committee's report. The Committee may modify the report deadlines, either on motion or sua sponte. Upon receipt of Kuzmin's first report, the Committee should hold

6

such additional proceedings as it sees fit, and thereafter submit to the Court a supplemental report concerning the Heng Lun Chen allegations.

The text of this panel's July 2007 order and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Kuzmin must disclose this order to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Kuzmin also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that he has complied with the preceding disclosure requirement. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Kuzmin, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: Michael Zachary
Counsel to the Grievance Panel

7

# APPENDIX 1

## Text of July 2007 order

For the reasons that follow, Vlad Kuzmin is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

This matter was commenced at the request of Qun Yang, who seeks disciplinary action against Kuzmin, his former attorney, based on Kuzmin's conduct in Yang's appeal from an order of the Board of Immigration Appeals ("BIA"). *See Qun Yang v. McElroy,* 98-4391-ag. Yang primarily alleges that Kuzmin had informed Yang that his petition for review in that appeal had been denied on the merits by this Court, and that Kuzmin had refused to provide him with a copy of this Court's opinion, despite numerous requests. *See id.,* letter filed Dec. 28, 2006 (noting attorney's failure to provide copy of Court's decision). According to Yang, upon reviewing this Court's docket sheet, he learned that, contrary to Kuzmin's statements, his petition had been dismissed in October 2005 due to Kuzmin's failure to file a brief. *See id.,* request for disciplinary action filed Apr. 5, 2007.

We note that the default that resulted in the dismissal of Yang's appeal was the second default by Kuzmin in the appeal. After the original April 2004 due date for Yang's brief passed without a brief being filed, this Court issued an order to show cause why the appeal should not be dismissed for failure to prosecute and why Yang's counsel should not be referred to this Court's disciplinary committee. *See id.,* order filed Aug. 19, 2004. Although Kuzmin responded to the order to show cause by asserting that Yang's petition for review had merit and that the failure to file the brief was inadvertent, *see id.,* response filed Sept. 17, 2004, Kuzmin failed to comply with the Court's subsequent scheduling order and the appeal was dismissed more than one year after the new due date for the brief. *See id.,* scheduling order filed Oct. 3, 2004, dismissal order filed Oct. 28, 2005.

After Yang obtained new counsel, he filed a motion for reinstatement of his appeal, in which he provided a detailed account of Kuzmin's alleged misconduct before both this Court and the administrative agency. *See id.,* motion filed Oct. 27, 2007.

8

However, Yang's new counsel eventually requested withdrawal of Yang's motion for reinstatement, as a result of the BIA's grant of his motion to reopen the immigration proceedings based on ineffective assistance of counsel. *See id.*, letter filed June 21, 2007. The letter requesting withdrawal did not identify the attorney who was found to be ineffective.

Aside from the allegations pertaining to Yang's case, a review of this Court's records indicates that the Court has dismissed an additional 28 of the 102 petitions for review for which Kuzmin was counsel of record, based on the petitioners' failure to comply with this Court's scheduling orders. *See* Second Circuit cases docketed under 02-4409(L) (later reinstated); 02-4410(con) (later reinstated); 02-4411(con) (later reinstated); 02-4470; 03-4045; 03-4301; 03-4350; 03-4483; 03-40079; 03-40196; 03-40686; 04-1877(later reinstated); 04-1931; 04-2694; 04-2976; 04-3058; 04-3310; 04-3429; 04-4029; 04-6644; 05-0683; 05-1038; 05-3601; 05-3675; 05-3871; 05-5199; 05-5673; 06-2128 (later reinstated).[1]

Upon due consideration of the matters described above, it is ORDERED that Vlad Kuzmin is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
　　　　Michael Zachary
　　　　Supervisory Staff Attorney

---

[1] The reinstatements noted in the list of dismissed appeals were pursuant to motions filed by Kuzmin. Additionally, a review of Third Circuit docket sheets available on-line indicates that at least two of the four petitions for review filed by Kuzmin in the Third Circuit have been dismissed for failure to comply with scheduling orders. *See* Third Circuit dockets in 05-3450 and 06-1080.

9

**March 2010 Report of the Committee
on Admissions and Grievances**

**REPORT & RECOMMENDATION**
**Re: In re Vlad Kuzmin, #07-9048-am**

I.     Introduction

By order dated July 31, 2007 (the "Referral Order"), the United States Court of Appeals for the Second Circuit ("the Court") referred Vlad Kuzmin to this Committee for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The Court's Referral Order raises two primary concerns. First, Kuzmin was counsel of record in 28 of 102 petitions for review that were dismissed for failure to comply with the Court's scheduling orders. Second, Kuzmin's former client, Qun Yang, alleges that Kuzmin twice failed to file briefs in his asylum appeal, *Yang v. McElroy*, No. 98-4391-ag, resulting in the dismissal of his case. According to Yang, Kuzmin concealed the default and told Yang that his case had been denied on the merits. Yang also contends that Kuzmin made false representations to immigration authorities on his behalf.

The Committee finds that Kuzmin failed to timely file numerous briefs without adequate justification, but does not find, by clear and convincing evidence, that Kuzmin committed the misconduct alleged by Yang. However, the Committee does find that Kuzmin failed to adequately advise the immigration authorities of the circumstances of his client's entry into the United States. The Committee recommends that Kuzmin be publicly reprimanded for his conduct and required to submit biannual reports on the functioning of his practice for the next two years. The following constitutes the Committee's report and recommendation to impose discipline on Kuzmin.

1



## II.     This Disciplinary Proceeding

On March 5, 2008, this Committee issued an Order to Show Cause regarding Kuzmin's conduct as alleged in the July 31, 2007 Referral Order. On March 26, 2008, Kuzmin's counsel sought an extension of time to file a response. Kuzmin's response and supporting documentation were received on May 2, 2008.

On November 6, 2008, Committee members Mary Jo White and Judge Howard A. Levine conducted an informal interview of Yang, Kuzmin's former client, with the assistance of a Mandarin interpreter. Yang's current counsel, Jan Allen Reiner, was also present.

A hearing was held on November 19, 2008 before Committee members White, Judge Levine and Loretta E. Lynch. Kuzmin and his counsel, Hal R. Lieberman, were in attendance and presented Peter Wilson, Esq., as a character witness. Yang and Reiner were also present for a part of the hearing, and Yang testified with the assistance of a Mandarin interpreter. The Committee's Report and Recommendation relies exclusively on Yang's sworn testimony and does not incorporate any factual or legal assertions made during Yang's informal interview on November 6, 2008.

The hearing was continued on February 12, 2009, in order to permit Kuzmin's counsel the opportunity to further cross-examine Yang. Kuzmin also presented Charles Christophe, Esq., as an additional character witness. On March 17, 2009, Kuzmin provided the Committee with a written response to specific questions raised during the hearing. On March 27, 2009, Kuzmin submitted a comprehensive post-hearing brief.

## III.     Factual Background

The following facts are taken from court records, written submissions to the Committee from Kuzmin and Yang and sworn hearing testimony.

Kuzmin has been practicing law for a little over a decade, primarily in the field of immigration. Currently a partner at Kuzmin & Associates, P.C., the firm that he founded five years ago, Kuzmin's practice consists primarily of immigration law cases, as well as related family law and commercial matters. Kuzmin's caseload includes approximately one thousand administrative filings and one hundred active court cases. Kuzmin normally has about twenty immigration matters pending in the federal appellate courts.

Kuzmin graduated from the University of Akron Law School in 1997, after attending college at Moscow Linguistic University and Walsh University in Canton, Ohio. Following law school, Kuzmin initially worked for a small medical malpractice firm, but in 2001, he joined Wilson & Associates, a firm specializing in immigration law. After the events of September 11, 2001, several of the partners and associates left Wilson & Associates, and the remaining lawyers

2

reorganized. On June 30, 2002, Wilson & Associates was dissolved and reformed into Wilson, Joshi & Kuzmin LLP. Mr. Kuzmin and his co-partner, Sunit Joshi, became responsible for all of the firm's cases. In March 2004, the partnership between Kuzmin and Joshi was dissolved and Mr. Kuzmin opened his own firm, Kuzmin & Associates, P.C.

Kuzmin is a member of the New York bar and is admitted to practice before the Second Circuit, Third Circuit, Ninth Circuit and Eleventh Circuit, as well as the U.S. District Courts for the Southern and Eastern Districts of New York.

Prior to the Committee's investigation, three of Mr. Kuzmin's former clients – Qun Yang, Xue Jia Lin, and Zhi Yong Liu – had filed complaints against him before the Departmental Disciplinary Committee of the New York Supreme Court, Appellate Division, First Department ("DDC"). The DDC investigated these complaints, but decided in each case to take no action.

IV.    Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office . . . .  An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule.").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645, 105 S. Ct. 2874, 2881 (1985).

3

As Kuzmin was a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Two sections are of particular relevance in this matter. First, the Code states that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009) (hereinafter "N.Y.R."). Second, the Code prohibits conduct that "adversely reflects on the lawyer's fitness as a lawyer." D.R. 1-102(A)(7); 22 N.Y.C.R.R. § 1200.3(A)(7); *see also* N.Y.R. 8.4(h).

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(a)(3); N.Y.C.R.R. § 1200.30(a)(3); *see also* N.Y.R. 1.3(b); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, the following factors should generally be considered: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

V.    The Alleged Misconduct

A.    **Defaults on Scheduling Orders**

The evidence demonstrates that in multiple instances, Kuzmin failed to comply with court scheduling orders and failed to prosecute his clients' cases diligently. The Referral Order alleged that 28 of 102 petitions for review in which Kuzmin was counsel of record were dismissed for failure to comply with scheduling orders. Kuzmin acknowledged the defaults and explained that

4

he had failed to submit timely briefs in these cases for one of four reasons: (1) he had lost contact with the client; (2) the case was actually assigned to his former partner and was not Kuzmin's responsibility (a change that was not reflected on the docket); (3) he and the client had decided not to pursue the case based on the merits; or (4) he had simply committed an administrative error or oversight.

### 1. Lost Contact With Client

In four cases, 03-4301, 03-40196, 04-1931 and 04-6644, Kuzmin failed to file briefs because he had lost contact with his clients, who had also failed to pay for his services. According to Kuzmin, these clients simply "disappeared." May 2, 2008 Response, at 15. Kuzmin "now understands that the proper procedure in these circumstances is to move to withdraw as counsel or move to extend the time to file a late brief prior to the expiration of the deadlines for filing the briefs." *Id.* at 16.

### 2. Cases Assigned to Former Partner

Three of the cases listed in the Referral Order (03-4045, 04-4350 and 03-4483) were actually assigned to Kuzmin's former partner, Sunit Joshi, upon the dissolution of Wilson, Joshi & Kuzmin LLP in March 2004. Though Joshi failed to file notices of appearance in these cases, it was Kuzmin's understanding that Joshi had taken full responsibility for them. Tr. 36. Kuzmin had no further contact with those clients after he formed his own firm. *Id.* Kuzmin told the Committee that he "now knows that he should have moved for leave to withdraw as counsel in those cases where the client had remained with [his] former partner, Mr. Joshi, or at least filed a substitution of counsel." May 2, 2008 Response, at 17.

### 3. Declined to Pursue Case Based on Merits

In twelve cases, Kuzmin declined to pursue an appeal due to a low likelihood of success or the availability of an alternative form of relief. Tr. 37. These cases include: 02-4470, 03-40079, 03-40686, 04-2694, 04-3058, 04-3310, 05-1038, 05-3601, 05-3675, 05-3871, 05-5199 and 05-5673. May 2, 2008 Response at 11-16. According to Kuzmin, a low probability of success was indicated in several cases based on untimeliness, mootness, or a lack of evidence to show persecution or other necessary elements of the clients' claims. *Id.* In addition, in at least three instances, Kuzmin's clients were able to obtain asylum by applying for an adjustment of status based on a spouse or other relative. May 2, 2008 Response, at 17; Tr. 37-38. Nevertheless, Kuzmin concedes that, in all of these twelve instances, he should have withdrawn the petitions. May 2, 2008 Response, at 16-17.

### 4. Administrative Error

5

Six cases involved "inadvertent administrative malfunction" that prevented Kuzmin from filing briefs in a timely manner. In one case (06-2128), Mr. Kuzmin's support staff confused the petitioner's brief due date with that of the government. May 2, 2008 Response, at 15. Ultimately, the case was reinstated and remanded. In another case (04-1877), the client's record was maintained in the file of the co-petitioner (whom Kuzmin also represented). May 2, 2008 Response, at 13; Tr. 39. With respect to three cases (04-3429, 04-4029, and 05-0683), Kuzmin stated that he had not received dismissal orders from the Court. May 2, 2008 Response, at 14. However, Kuzmin did not address whether he had ever received the briefing schedules in those cases and/or could have discovered the briefing deadlines through other means. In a sixth case (04-2976), Kuzmin stated that he had filed a request to suspend the briefing schedule in order to hold a pre-argument conference ("CAMP conference"), but never received a response from the Court. May 2, 2008 Response, at 14. When no date was set for the conference, he did not follow up to inquire about the briefing schedule. Kuzmin acknowledged that he should have filed a motion to stay the briefing schedule. Tr. 64-65.

In addition, three of the cases cited in the Referral Order (02-4409, 02-4410, 02-4411) were consolidated and withdrawn by stipulation between Mr. Kuzmin and the United States Attorney's Office. Tr. 37. Kuzmin and the Assistant U.S. Attorney then jointly moved to reinstate and remand the cases to the Board of Immigration Appeals pursuant to a second stipulation. *Id.*

### 5.     Kuzmin's Response

Since 2006, Kuzmin has increased staffing at his firm, and has implemented a system whereby he and his office manager both check the calendar to keep track of due dates. Mar. 27, 2009 Response, at 9; Tr. 43-44; May 2, 2008 Response at 16-17. The new staff includes a docket manager / office manager, additional lawyers and paralegals. Mar. 27, 2009 Response, at 9. According to Kuzmin, he now has a high confidence level that he will be able to comply with Court scheduling orders. Tr. 44.

Kuzmin did not believe that his actions had prejudiced his clients in any way, either because he lost contact with them, pursuit of an appeal would not have been successful, the client was able to obtain legal status through other means or the client's case was reinstated. Tr. 40. He acknowledged, however, that he should not have defaulted in any of these cases and that he had significantly inconvenienced the Court by doing so. *Id.* at 40-41.

### 6.   Findings

The Committee finds that Kuzmin's failure to comply with proper procedures for withdrawal or dismissal of appeals violated the Court's scheduling orders as well as his obligation either to represent his clients or to terminate the representation. Kuzmin's conduct disrupted the Court's proceedings and burdened the Court's staff with additional work. *See*

6

*Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); D.R. 2-110(A)(2); 22 N.Y.C.R.R. § 1200.15(A)(2) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules"); *see also* N.Y.R. 1.16(e). In addition, it is apparent that Kuzmin's conduct had the potential to cause significant injury to his clients.

Both aggravating and mitigating factors are present. The aggravating factors considered by the Committee include: (1) Kuzmin's pattern of dilatory conduct and (2) the vulnerability of Kuzmin's immigrant clients. ABA Standards § 9.22(c) & (h). The mitigating factors present are: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal problems relating to the dissolution of Kuzmin's firm; (4) a cooperative attitude with respect to the Committee's investigation; and (5) Kuzmin's remorse. ABA Standards § 9.32(a), (b), (c), (e) & (l).

## B.     Recent Untimely Submissions

Since the July 31, 2007 referral order, Kuzmin has made untimely filings in six instances. On four occasions, he requested an extension of time from the Court after the briefing due date had already passed. In two cases, he submitted late briefs. In a post-hearing submission dated March 17, 2009, Kuzmin specifically addressed the Committee's concern about these matters and provided supporting documentation indicating the corrective efforts that he had undertaken with respect to each case. Kuzmin argued that, of the forty to forty-five cases that he handled before the Second Circuit during this time period, these six cases are isolated instances that do not demonstrate an ongoing pattern of dilatory conduct. Mar. 17, 2009 Response, at 3.

### 1.     Late Motions for Extensions of Time

According to Kuzmin, in the matter of *Zheng v. Mukasey*, No. 07-3741-ag, he did not receive the scheduling order from the Court. Immediately upon becoming aware of the order – three days after the brief due date – Kuzmin filed a motion for an extension of time. The Court granted the motion.

In the case of *Weng v. Mukasey*, No. 07-4883-ag, Kuzmin timely prepared a request for a 30-day-extension of time, but the letter was never submitted to the Court, due to a clerical error by his staff. Upon discovering three days after the brief due date that the request for an extension of time had not been mailed, Kuzmin promptly moved to modify the briefing schedule. The motion was granted

*Zheng v. Mukasey*, No. 07-5379-ag, involved two cases that had been consolidated – one, a direct appeal from the BIA and the other, a subsequent appeal of a motion for reconsideration before the BIA. After the consolidation, Kuzmin expected the Court to issue a new scheduling order for the combined cases. No such order was issued, and Kuzmin missed the briefing date

7

that had been set in the direct appeal. Four months later, the Court issued an Order to Show Cause, and Kuzmin submitted a timely brief in response.

In the case of *Li v. Mukasey*, No. 07-5380-ag, Kuzmin moved to modify the briefing schedule on the date that petitioner's brief was due. The Court granted only a one-week extension of time, but Kuzmin did not receive the order until several days after the week had expired. In fact, he had actually filed the brief one day after the new due date, without knowledge of the Court's order. Nevertheless, upon receiving the order, Kuzmin filed a motion for leave to file a late brief after-the-fact. The Court granted the motion.

### 2. Late Briefs

In the matter of *Zheng v. Mukasey*, No. 08-1800-ag, Kuzmin had timely filed the brief, but it was not accepted by the clerk's office because the cover of the brief did not indicate that the case was a consolidated matter. The clerk's office requested an amended cover, which Kuzmin submitted two weeks later.

In the case of *Zheng v. Mukasey*, No. 08-3457-ag, Kuzmin's office had erroneously recorded the brief due date as November 17, 2008, instead of November 7, 2008. Kuzmin submitted the brief on November 17th, and upon learning that his filing was late, immediately submitted an after-the-fact motion for leave to file a late brief, which was granted.

### 3. Findings

Kuzmin's recent dilatory conduct is of particular concern to the Committee, since it occurred *after* Kuzmin was made aware that untimely filings were unacceptable to the Court and such filings had resulted in a disciplinary investigation against him. In addition, at least two of the out of time filings were caused by clerical errors committed by either Kuzmin or his staff, suggesting that the administrative changes put in place by Kuzmin during 2008 were not entirely effective. Fortunately, none of the overdue filings in these six cases resulted in defaults, and thus Kuzmin's clients were not prejudiced. Nevertheless, Kuzmin's actions caused additional needless disruption and burden to the Court. *Bennett*, 525 F.3d at 225; D.R. 2-110(A)(2); 22 N.Y.C.R.R. § 1200.15(A)(2); *see also* N.Y.R. 1.16(e).

Aggravating factors with respect to this conduct include: the Court's prior referral order alleging untimely filings; and a pattern of misconduct. ABA Standards § 9.22(a) & (c). Mitigation factors are: (1) Kuzmin's timely good faith efforts to rectify his untimely submissions by filing motions to submit late briefs or to modify the scheduling order; (2) a cooperative attitude towards the Committee's investigation; and (3) Kuzmin's remorse. ABA Standards § 9.32(d), (e) & (l).

8

## C. Kuzmin's Representation of Qun Yang

The Referral Order cites both a letter and motion from Kuzmin's former client, Yang, concerning Kuzmin's representation of him in the matter of *Yang v. McElroy*, No. 98-4391-ag. In an April 4, 2007 letter to the Court, Yang sought disciplinary sanctions against Kuzmin, in connection alleging that Kuzmin had defaulted in Yang's case by twice failing to file timely briefs. The letter also contended that Kuzmin had misled Yang to believe that his case had been dismissed on the merits. In an October 27, 2006 motion to reinstate his Second Circuit case, Yang also provided a detailed account of Kuzmin's alleged misconduct before both the Court and the BIA. The motion to reinstate further alleged that Kuzmin had knowingly filed documents on Yang's behalf with the Department of Homeland Security / United States Citizenship and Immigration Services (DHS / USCIS) that contained false statements, causing DHS / USCIS to deny Yang's application for an adjustment of status based upon his marriage to a United States citizen.

### 1. Background

Yang is a citizen of China who left his country without authorization in March 1993, traveling to Singapore and then Korea before arriving in the United States two months later. He then applied for asylum in the United States, arguing that his extensive participation in pro-democracy protests in China put him at risk of persecution if he were to return. While Yang's initial asylum application was pending, he also participated in a pro-democracy protest in the United States and wrote an article denouncing the Communist Party in China that was published in a Chinese-American news journal on December 13, 1993.

Yang was initially paroled into the United States based on an application for political asylum that he filed at JFK airport. Upon entering the country, he quickly secured the representation of attorney Yiming Zhu to pursue his asylum application. On January 18, 1994, Yang's asylum application was denied on the merits by an Immigration Judge ("IJ"), who also concluded that Yang had committed fraud by entering the United States using counterfeit documents. Yang appealed that decision before a three-judge panel of the Board of Immigration Appeals ("BIA") and lost, though one judge dissented in Yang's favor. Yang decided to seek a new attorney, and engaged the law firm Wilson & Associates, who filed a petition for review of the BIA's decision with the U.S. Court of Appeals for the Second Circuit. In a published decision, the Court held that

> [C]urrent country conditions "bear vitally" as to asylum, and
> because the administrative record is silent as to China's
> contemporary treatment of persons with backgrounds similar to
> Yang's, we agree with the INS that remand is appropriate in this
> case. Remand to the BIA will enable it to address several respects
> in which the present record appears deficient. . . . We reserve

9

22992333v3

jurisdiction and remand to the BIA for the limited purpose of
entertaining and resolving a motion by applicant to consider
whether circumstances in China since 1993 have so changed that
he has a well-founded fear that, given the totality of his actions, he
would be subject to persecution if deported to China.

*Yang v. McElroy*, 277 F.3d 158, 163-64 (2d Cir. 2002) (citations omitted).

Once Yang's case was remanded to the BIA, the agency mistakenly sent all
correspondence to his former attorney, Zhu, and Yang's new counsel never received the briefing
schedule. Yang's case was dismissed without his or his attorneys' knowledge. As a result, when
Yang applied to renew his work authorization, he was taken into custody by immigration
authorities. Kuzmin first became involved in actively representing Yang when he filed a motion
to reinstate Yang's Second Circuit case and to secure Yang's release from federal prison. Tr. 14-
15. (Prior to that stage, Yang's case had been handled by other attorneys at Wilson & Associates
and its successor firm, Wilson, Joshi & Kuzmin.) On October 1, 2003, the Court granted
Yang's' motion to reinstate and to stay his deportation pending resolution of his appeal. Yang
was released from prison on November 6, 2003.

### 2. Defaults

Upon the October 2003 reinstatement of his appeal before the Court, Yang's brief was
due on April 5, 2004. However, Kuzmin failed to file a brief, and on August 19, 2004, the Court
issued an Order to Show Cause. According to Kuzmin, he received neither the briefing schedule
nor the order because at the time, his partnership with Joshi was deteriorating and Joshi had
locked Kuzmin out of their shared office, denying Kuzmin access to the case files. Tr. 59-62,
214-16.

On September 16, 2004, Kuzmin reviewed the Yang case file and contacted the Assistant
U.S. Attorney handling the matter. May 2, 2008 Response, at 7. Upon learning from the AUSA
that an Order to Show Cause had been issued, Kuzmin filed a motion for modification of the
scheduling order the following day, arguing that Yang's case was meritorious and requesting
fourteen days in which to submit a brief. *Id.* The motion was granted and Yang's brief was due
on October 18, 2004. Kuzmin never filed the brief, and one year later, on October 28, 2005,
Yang's case was dismissed.

Kuzmin claims that, after responding to the Order to Show Cause and successfully
obtaining a two-week extension of time to file the Yang brief, he reviewed the case law and
determined that Yang did not have a strong case for asylum. Tr. 15-19. Kuzmin testified that he
discussed the merits of the case with his client, and they jointly decided that it would be in
Yang's best interest to abandon the Second Circuit appeal and instead pursue an adjustment of
immigration status based on Yang's recent marriage. Tr. 15-21, 62, 221-27. Kuzmin added that

10

Yang's decision was also motivated by his desire to avoid paying an additional $2500 fee to Kuzmin for drafting and filing the brief. Tr. 233-34. Yang's application for an adjustment of status was submitted on May 5, 2005. It was denied on May 23, 2006.

During the period between the brief due date and the filing of Yang's adjustment of status petition, Yang risked having his Second Circuit case dismissed and his stay of removal lifted, making him vulnerable to detention and/or deportation. When asked whether Kuzmin had informed Yang of this risk during their discussion about whether to file the Second Circuit brief, Kuzmin answered "I don't recall specifically discussing the stay . . . but I am sure Mr. Yang was aware if he had a stay and you don't file petition, it will be denied." Tr. 228; *see also* Tr. 230-33. Kuzmin admitted that he did not take steps to prevent his client from being detained or deported between October 18, 2004, when Yang's brief was due, and May 5, 2005, when Yang's adjustment of status application was filed. Tr. 231-33.

During the hearing, Yang presented a different understanding about his discussions with Kuzmin concerning the filing of the Second Circuit brief. Yang could not remember whether he ever had a discussion with Kuzmin about the merits of his case. Tr. 157-59. According to Yang, he did agree to apply for an adjustment of status, but he did not intend to abandon his Second Circuit petition. Tr. 86, 160-61, 199. Yang also denied being told that he would have to pay an additional fee for the Second Circuit brief. Tr. 160.

Yang testified that he did not learn that his Second Circuit case had been denied until 2006, when he and a member of Kuzmin's staff, Mr. Chen, attended an immigration interview related to Yang's adjustment of status application. Tr. 87-88, 107, 109. While attending the interview, Yang inquired about the status of his Second Circuit case, and Chen informed him that the case had been closed for months. Tr. 107. Yang testified that he became angry with Chen since "during these several months I could have been arrested again." Tr. 108. Yang also noted that, between 2004 and 2006, he had asked staff at Kuzmin's office about the status of his Second Circuit appeal many times and was repeatedly told that the case was still pending. Tr. 107-09. According to Yang, he first learned that Kuzmin had missed briefing deadlines upon hiring a new attorney to reopen his case. Tr. 196-98.

At the hearing, Yang's current counsel, Reiner, contended that Kuzmin's claim that Yang's case was weak on the merits was undermined by the Second Circuit's previous remand of Yang's case to the BIA for consideration of changed country conditions. Tr. 201-02. According to Reiner, the Court need not have reached the merits of Yang's case – Kuzmin could have simply argued that, due to mailing errors, Yang never had the opportunity to argue before the BIA that changed country conditions warranted a grant of asylum. *Id.* Kuzmin maintains that the state of the law two years later had changed such that, had he filed a brief on Yang's behalf in October of 2004, (1) the Court would not have granted a second remand of Yang's case to the BIA and (2) the Court would have denied Yang's asylum appeal on the merits, as it had done in other recent cases involving similar facts. Tr. 204-06, 223-27.

11

The Committee finds that Kuzmin failed to prosecute Yang's case diligently by missing the April 2004 briefing deadline and related Order to Show Cause. Although he was in the midst of the turbulent dissolution of his law partnership, it is apparent that Kuzmin did not take adequate steps to ensure that he responded to client needs and court deadlines in a timely manner, as required by the disciplinary rules and the Court's orders. It is less clear whether Kuzmin failed to meet the second briefing deadline in October 2004 against his client's wishes, as alleged. While there are clear reasons why it appears unlikely that Yang would have knowingly consented to withdrawal of his Second Circuit petition, Kuzmin testified credibly that he discussed the matter with Yang and believed that he had Yang's consent to abandon his appeal. Accordingly, the Committee cannot find, by clear and convincing evidence, that Kuzmin defaulted on the case to his client's detriment and without his client's permission. However, at the least, by failing to withdraw the petition, Kuzmin unnecessarily inconvenienced the Court and failed to provide clarity to Yang.

There are both aggravating and mitigating factors with respect to this conduct. Yang's vulnerability as an immigrant and non-lawyer is an aggravating factor. ABA Standards § 9.22(h). Kuzmin's lack of a prior disciplinary record, absence of a dishonest or selfish motive, personal problems concerning the dissolution of his firm and his cooperation with the Committee are mitigating factors. ABA Standards § 9.32(a), (b), (c) & (e).

### 3. False Statements

Yang contends that, in the immigration documents that he filed on Yang's behalf in 2005 and 2006, Kuzmin repeatedly made the false assertion that no fraud had been committed by Yang upon his entry to the United States, causing Yang's applications to be denied. According to Yang, he "continuously asserted to Mr. Kuzmin that he did not wish to argue that he did not know that he had used fraudulent documents at entry. In addition to putting forth arguments not allowed by law, Mr. Kuzmin was doing so against Petitioner's wishes." *Yang*, No. 98-4391-ag, Motion for Reinstatement of Petition for Review, at 12-13 (Oct. 27, 2006).

Upon entering the United States, Yang admitted to an immigration officer at JFK Airport that he had purchased a green card by paying $1500 to a friend in Singapore. *Yang*, No. 98-4391-ag, Certified Administrative Record, at 171. The interviewing officer described the card as "counterfeit." *Id.* During a January 18, 1994 hearing before an Immigration Judge ("IJ"), Yang testified that he had "no idea" whether the green card that he had purchased was authentic and that he had entered the United States using a passport that had not been issued by the Chinese government. *Id.* at 84. In an oral decision, the IJ concluded that Yang had entered the country using fraudulent documents. *Id.* at 38-39.

In May 2005, Kuzmin prepared an I-130 Petition for Relative Visa and I-485 Application for Adjustment of Status on behalf of Yang. Exhibit A, at 7. Yang answered "no" to Question 10 of the form, which asked whether he had, "by fraud or willful misrepresentation of a material

12

fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit." *Id.* The Petition and Application were signed by Yang and Kuzmin. In answering Question 9 of the same form, Kuzmin acknowledged that an IJ had previously ordered Yang "excluded." *Id.* According to Kuzmin, the answer to Question 9 should have led immigration officials to check the administrative record to learn about the IJ finding. Tr. 68. Thus, "Mr. Yang's answer to Question No. 10 was a way to signal the fact that, notwithstanding the IJ's finding, Mr. Yang honestly did not know, at the time he obtained them, that the documents were not genuine." Mar. 27, 2009 Response, at 17.

On March 2, 2006, Yang attended an interview regarding his adjustment of status application. Though Kuzmin did not attend the interview, Yang was accompanied by a lawyer and a non-lawyer staff member from Kuzmin's office. Tr. 89. On May 23, 2006, the U.S. Citizenship and Immigration Service (USCIS) denied Yang's application on the basis that Yang had falsely claimed at his interview that he did not enter the country through fraudulent means, contrary to evidence in the record that Yang had presented counterfeit documents upon entry. Exhibit B.

Though immigrants who are found to have attempted to enter the United States through fraudulent means are generally deemed "inadmissible" under Section 212(a)(6)(C) of the Immigration and Nationality Act, in June 2006, a representative from Kuzmin & Associates sought a waiver of the law on the ground that Yang "was not aware of the nature of the documents given to him when he was fleeing persecution in China." Exhibit C. In August 2006, the USCIS denied Yang's waiver application and motion to reopen, noting that Yang had previously admitted to the immigration officer at JFK airport that he had paid $1,500 for a counterfeit resident alien card. Exhibit D.

According to Kuzmin, he had represented to immigration authorities in the adjustment of status petition that Yang had not used fraudulent means to enter the country because Yang had always maintained the position that he did not know whether the documents were fraudulent. Tr. 26-31, 50-59. Although Kuzmin was aware that an IJ had held otherwise, Kuzmin took the stance that Yang continued to dispute the IJ's finding. Tr. 30-32, 50-59. Kuzmin also argued that, notwithstanding the written submissions, the denial of Yang's adjustment of status application was ultimately based upon Yang's own representations during the interview, at which Kuzmin was not present.[1] Tr. 57-58. Kuzmin testified that, in any case, he had advised Yang to answer all questions truthfully at the interview. Tr. 239-240.

---

[1] According to Yang, he had asked Kuzmin to accompany him to the interview, but was told that he would have to decide between Kuzmin or Mr. Chen, a member of Kuzmin's staff. Tr. 89. Yang chose to be joined by Chen, since Chen spoke Mandarin and Yang had interacted with him frequently in the past. Tr. 89-90. However, Kuzmin contends that he always recommends that clients have an attorney accompany them to immigration interviews, but Yang declined to have Kuzmin join him because it would be too expensive.

13

Yang testified that it was Kuzmin's staff member Mr. Chen, not Kuzmin, who had advised him prior to his March 2006 interview with immigration authorities. Tr. 168-170, 191-92. Chen allegedly coached Yang to deflect questions about fraudulent entry documents by responding that all of his documents had been prepared by a "snakehead" (a member of an organization that helps individuals to immigrate to developed countries – often by illegal means – in exchange for payment). Tr. 90. Yang could not recall exactly what he told the immigration officer during the interview, and no transcript was recorded.

Following the interview, the USCIS denied Yang's application and Yang met with Kuzmin in order to prepare an affidavit in connection with a motion to reconsider. Tr. 168-69, 191-92. Yang testified that, during that meeting, Kuzmin instructed him not to state that he had used fraudulent documents to enter the country. Tr. 170. Yang's motion to reconsider was filed by an associate at Kuzmin's firm and presented the argument that, at the time he entered the country, Yang did not know whether his documents were authentic. Tr. 248-49; Exhibit C, at 2 ("USCIS decision held that petitioner stated that he never used fraud. (USCIS Dec. 2.) This is incorrect. Petitioner stated that he was not aware of the nature of the documents given to him when he was fleeing persecution in China.") (citation omitted). Although Kuzmin generally reviews filings prepared by associates, he did not recall whether he had reviewed Yang's motion before it was submitted. Tr. 249. According to Kuzmin, the statements in the motion to reconsider were entirely accurate, based on what Yang had told him. Mar. 27 Response, at 17-18.

Given Yang's prior disclosures to various immigration authorities, and the IJ's prior finding that Yang had committed fraud by entering the United States using counterfeit documents, Kuzmin should have taken precautions to ensure that any statements made orally or in writing to the USCIS on the issue of Yang's entry to the country were accurate, complete and addressed any apparent inconsistencies in the record. Merely checking "no" to Question 10, without including any additional explanation that this answer was meant to indicate that Yang was unaware of whether the documents were genuine or not – and without including documentation of the relevant circumstances and an application for waiver of inadmissibility as provided under the Immigration and Nationality Act – clearly disadvantaged his client.

However, while Kuzmin's conduct with regard to Question 10 of the May 5, 2005 petition and in overseeing the associate and staff member who advised Yang on his interview and motion to reconsider was problematic, we do not believe it to be separately sanctionable as fraudulent conduct. The relevant disciplinary rule, DR 1-102(A)(4), provides that "[a] lawyer or law firm shall not: . . . [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." *See also* N.Y.R. 8.4(c); DR 1-104(B), (C) & (D) (concerning oversight of associates and staff); N.Y.R. 5.1(b), (c) & (d) (same). While the failure of Kuzmin and his staff

---

Tr. 238. It appears that Yang was accompanied by another attorney from Kuzmin's office. Tr. 89.

14

to more clearly articulate to the USCIS the distinction between Yang's position concerning his use of fraudulent documents and the findings in the administrative record constituted a breach of Kuzmin's duty as an attorney, to act with diligence and competence, the Committee cannot conclude, by clear and convincing evidence, that Kuzmin or his subordinates engaged in dishonesty, fraud, deceit or misrepresentation.

### D.    Non-Refundable Fee Retainer

The Committee finds that the standard retainer agreement utilized by Kuzmin until recently was in violation of the Disciplinary Rules in New York. Therefore, Kuzmin's use of such an agreement with his clients constitutes sanctionable misconduct. Kuzmin submitted to the Committee a sample retainer agreement dated March 2006. Exhibit E. In drafting the agreement, Kuzmin relied upon the retainer agreement used by the first immigration firm that he had worked for, Wilson & Associates. Tr. 260-61. Paragraph 2 provides, *inter alia,* that:

> If the Client shall discharge the Attorney, the Client, however, shall still pay the fees in their entirety, as set forth in this Agreement, by reason of the fact that the Attorney may still have remaining legal obligations in respect of the Client, even though the Client discharged the Attorney. Upon discharge, the Attorney may elect to bill the Client at an hourly fee of $250 for past retained work and future work required by the Courts / DHS.

It is now well-established that non-refundable retainer agreements constitute *per se* violations of the Disciplinary Rules of New York's Code of Professional Responsibility. DR 2-110A (3) ("A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned."); *see also* DR 2-106 (A), (C)(3) (prohibiting charging of "excessive" fees and fees "proscribed by law or rule of court"); N.Y. Rule 1.5(d) ("A lawyer may not enter into an arrangement for, charge or collect a nonrefundable retainer fee."); N.Y. Rule 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense."); *see also Matter of Cooperman,* 83 N.Y.2d 465, 471 (1994); *Matter of Perez-Olivo,* 820 N.Y.S.2d 14, 15, 17-18 (N.Y. App. Div. 2006).

At the hearing, Kuzmin testified that, in practice, his retainers were not non-refundable, and said that he had refunded full or partial fees on multiple occasions. Tr. 258-60, 261-63.

Paragraph 3 of the retainer agreement provides that "[i]n the event fees are not timely paid, all work shall stop in respect of representing the Client, even though this might be to prejudice of the Client's case." This language violates Disciplinary Rule 2-110, which provides that (1) an attorney may not withdraw from employment without permission from a tribunal where required, and (2) where withdrawal is otherwise permitted or required, an attorney may not do so until he has "taken steps to the extent reasonably practicable to avoid foreseeable prejudice

15

to the rights of the client." DR 2-110(A)(1) & (2); *see also* N.Y. Rule 1.16 (d) ("If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a matter before that tribunal without its permission. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation"); N.Y. Rule 1.16 (e) (identical to DR 2-110[A][1]).

Kuzmin's counsel stated that he had reviewed Kuzmin's retainer agreement and edited the language in Paragraphs 2 and 3 to make it consistent with New York ethical rules. Tr. 5-7; Exhibit F.

An aggravating factor with regard to this conduct is the vulnerability of Kuzmin's immigrant clients. ABA Standards § 9.22(h). There are several mitigating factors: (1) absence of prior discipline, (2) absence of a dishonest or selfish motive, (3) good faith effort to rectify the consequence of his misconduct, (4) full cooperation with the Committee, (5) inexperience in the practice of law, as demonstrated in part by Roman's reliance on the AILA sample retainer, and (6) remorse.

## VI.    Recommendation

Based on clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on neglect of client matters and failure to comply with Court scheduling orders and disciplinary rules. Fed. R. App. P. 46(c) ("A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule."). The record shows that (1) on multiple occasions, Kuzmin missed Court deadlines; (2) Kuzmin missed both the initial briefing date and order to show cause response date in Yang's case and failed to notify his client promptly; and (3) Kuzmin used a retainer agreement that did not comport with New York's ethical rules. In addition, Kuzmin repeatedly failed to formally withdraw from or stipulate to the dismissal of cases which he had in practice abandoned, thus burdening the Court with extra work, and violating the Court's scheduling orders.

Kuzmin's pattern of dilatory conduct and the risk of prejudice to his unsophisticated immigrant clients both constitute aggravating factors. ABA Standards § 9.22(c) & (h). However, Kuzmin has presented several mitigating factors for the Committee to consider in determining what sanctions are appropriate. Most important, Kuzmin has taken steps to reform his practice and to promptly address recent administrative errors and difficulties. Though he has submitted a few untimely filings, he has not defaulted in any cases since the Referral Order was issued. *See id.* § 9.32(d). Kuzmin has also implemented a new retainer agreement.

In addition, Kuzmin's conduct appears to have been caused largely by personal difficulties and a lack of case management skills. *See id.* § 9.32(c) & (f). Kuzmin and his counsel have been extremely cooperative with the Committee's investigation by, among other

16

things, responding to multiple document requests. *See id.* § 9.32(e). Based upon the statements of the character witnesses, it appears that Kuzmin has a positive reputation in the immigration law bar and engages in significant pro bono work. *See id.* § 9.32(g). In addition, Kuzmin has never been previously sanctioned, and there is no indication that his conduct was motivated by a dishonest or selfish motive. *See id.* § 9.32 (a) & (b). Kuzmin is also remorseful about his conduct. *See id.* § 9.32(l).

Based upon Kuzmin's misconduct with regard to neglect of client matters and failure to comply with Court orders, the Committee finds that a public reprimand is warranted.

In addition, Kuzmin should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee a status report on the functioning of his practice, which shall include sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. During these reporting periods, Kuzmin should also submit to the Committee sworn statements noting (3) any criticism of his representation of his clients in any written order of the Court or any other tribunal. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Kuzmin and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.

17

22992333v3